IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

```
CHERNYKA MARTIN,                :
                                :
    Plaintiff,                  :
                                :
v.                              :       CIVIL ACTION 06-0157-M
                                :
JO ANNE B. BARNHART,            :
Commissioner of                 :
Social Security,                :
                                :
    Defendant.                  :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was waived in this action (Doc. 17). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence. *Richard-son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting* *Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born May 22, 1980.  At the time of the administrative hearing, Martin was twenty-four years old, had completed some college education (Tr. 107), and had no previous work experience (Tr. 196).  In claiming benefits, Plaintiff alleges disability due to attention deficit hyperactivity disorder, major depression disorder, and morbid obesity (Tr. 62).

The Plaintiff protectively filed an SSI application on June 25, 2003 (Tr. 55-60).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she was unable to perform a full range of light work, there were jobs in the national economy which she could perform (Tr. 12-29). Plaintiff requested review of the hearing decision (Tr. 187) by the Appeals Council, but it was denied (Tr. 5-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Martin alleges that:  (1) The ALJ did not properly consider the opinions and conclusions of her treating physicians; and (2) the ALJ did not

properly consider her obesity (Doc. 10). Defendant has responded to—and denies—these claims (Doc. 13).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians. Martin specifically refers to the opinions of Drs. Pineda and Davis (Doc. 10, pp. 2-7). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2005). The medical evidence of record follows.

On June 24, 2003, Dr. Santhi K. Das performed a psychological examination in which he found that Martin had very limited insight and a poor sense of reality (Tr. 103-04). The doctor diagnosed her to have attention deficit without hyperactivity, major depression, generalized anxiety disorder, social phobia, and morbid obesity.

Dr. Glenton Davis saw Plaintiff on June 25, 2003 and noted no apparent distress; he found tenderness in the right upper

---

[1]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

quadrant of her abdomen and diagnosed her to have suppurative hidradenitis[2] (Tr. 107).  On July 9, Davis again noted abdomen tenderness and a buttock boil; he noted that the hidradenitis was resolved and that reflux was Martin's biggest problem (Tr. 106).

On July 28, Psychiatrist Das noted that Plaintiff had complained of poor sleep; he suggested school activities as her daily activities were very restricted (Tr. 146-47).

On August 1, Dr. Davis noted recurrent boils and reflux (Tr. 156); on the twentieth of that month, he treated Plaintiff for rectal bleeding, a cough, and congestion (Tr. 155).

On August 21, 2003, Dr. Scott Bell performed a consultative physical examination which was thorough in its measurement of Plaintiff's range of motions in the following areas:  cervical, dorsolumbar, hip joints, knee joints, ankle joints, shoulder joints, elbow joints, wrist, and finger/thumb joints;[3] she had a normal chest exam (Tr. 108-12).  Bell diagnosed Martin to suffer from fibromyalgia with chest pain, depression, marked obesity, nausea, vomiting, and diarrhea.[4]  It was the doctor's opinion

---

[2]"Hidradenitis suppurativa [] is a disease of the apocrine glands, which are a type of sweat gland.  People with hidradenitis suppurativa develop painful bumps or sores in the armpits and groin.  In women it can also occur under the breasts." *See* http://familydoctor.org/895.xml

[3]The Court is not going to recite these measurements herein; they can be found, however, at Tr. 109-110.

[4]The doctor noted that the nausea, vomiting, and diarrhea were based on Plaintiff's self-reported medical history; he expressed the opinion that the complaints were exaggerated (Tr. 110).

that Martin would be able to stand and walk for six hours without limitations, secondary to her obesity and fibromyalgia, and sit with no limitation; Bell thought Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, and lift fifty pounds on an infrequent basis (Tr. 111).  The doctor indicated that Martin should stoop only occasionally and rarely crouch (*id.*).  The Court notes that this functional assessment compares favorably with the ability to do light work.[5]

A psychological consultative exam was performed by Psychologist Richard Reynolds on August 22, 2003 who found Plaintiff to have logical thought content, though she reported having visual hallucinations and suicidal ideation (Tr. 113-15). Her affect was appropriate; recent and remote memory were fair. "Judgment, insight, and decision making abilities appear[ed] impaired by depression" (Tr. 115).  It was Reynolds's further impression that Martin's "ability to understand, carry out, to remember instructions, and to respond appropriately to supervision, co-workers, work pressures, in a work setting [was]

---

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b)(2005).

impaired by depression" (*id.*).

On September 10, Davis noted that she was suffering from reflux (Tr. 154).

On September 16, Das noted a complaint of difficulty with concentration though Martin was sleeping better; Plaintiff was placed on an 1100-calorie diet (Tr. 145-46).

On October 20, Davis treated Plaintiff for gastroenteritis and sinusitis (Tr. 153).

On November 11, Das noted that activities were still very restricted so he modified her medication regimen (Tr. 144).

On December 5, Plaintiff had acute purulent sinusitis and a sebaceous cyst (Tr. 152).

On December 23, 2003, Das encouraged her to try and lose weight and modified her medications again (Tr. 143).

Plaintiff visited the Cahaba Center for Mental Health on January 5, 2004, seeking psychiatric evaluation and instruction (Tr. 163-66).

On January 20, 2004, Davis again treated Martin for acute purulent sinusitis and a sebaceous cyst though the cyst was in a different location (Tr. 151).

On January 26, Therapist Jo Anne Rowe, at the Cahaba Center, talked with Martin, discussing her medical history and daily

routine and activities; Rowe suggested Plaintiff had a GAF of 55[6] (Tr. 162).  On February 10, Rowe noted that Martin reported being less anxious and irritable and that she seemed less dysphoric; Plaintiff reported monitoring her diet more closely and walking daily (Tr. 161).  On that same date, Psychiatrist Winston Pineda, in his initial examination, found Martin's affect to be "rather timid, somewhat depressed, non-labile" though her thoughts were coherent and relevant (Tr. 159).  Pineda found her memory, concentration, insight, and judgment to be grossly intact; he found Plaintiff to have average intellectual functioning (Tr. 160).  He diagnosed her to have major depressive disorder and morbid obesity.  On April 5, Pineda noted that Martin reported feeling less depressed and having a bit more energy; she had lost some weight and seemed more active (Tr. 158).  The Psychiatrist noted that Plaintiff was showing some improvement.

On April 14, 2004, Dr. Davis saw Martin for acute purulent sinusitis, osteoarthritis, and reflux; he put her on the Atkin's diet (Tr. 150).  On May 24, Davis treated Plaintiff for chronic sinusitis, reflux, and morbid obesity (Tr. 182).

On May 26, Therapist Rowe noted that Martin was euthymic and

---

[6]Defendant has stated that "[a] GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-work)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (*see* Doc. 13, p. 6 n.4).

that she reported being improved with her medications and sleeping and that she had a decreased appetite (Tr. 157).  On June 1, 2004, Martin reported abnormal sleep patterns, increased appetite, low self esteem; Rowe gave her encouragement for drinking more water and walking (Tr. 173).  On August 2, Martin reported feeling much better after eating better, drinking water, and walking; Rowe noted that she was walking thirty minutes a day (Tr. 172).  The next day, Dr. Pineda noted that Plaintiff had lost twenty pounds with her regular exercise; Martin noted no mood problems or any other problems (Tr. 171).  The Psychiatrist noted that she was "maintaining fairly well" (*id.*).

On September 10, Dr. Davis noted an abscess on the left back, anterior chest wall (Tr. 181).  On October 25, Davis assessed Martin to have hypertension, reflux, and acute pharyngitis (Tr. 180).  On that same date, October 25, 2004, Davis completed a pain form[7] which indicated that Martin's pain would distract her from adequately performing her daily activities, that physical activity would increase her pain and distract her from her tasks, but that medication side effects would only be mildly troublesome (Tr. 170).

On November 2, 2004, Plaintiff told Rowe that her medications were making her sleep too much; her sleep had

---

[7]The ALJ attributed the pain questionnaire to a mental health therapist though the record would seem to show that Dr. Davis actually completed it (*cf.* Tr. 3, 21, 23, 170).

improved, but she still overate at times and was dysthymic (Tr. 175).  On that same date, Rowe and Pineda completed a mental medical source statement in which they indicated that Plaintiff was markedly limited in her ability to relate to other people and perform complex, repetitive, or varied tasks (Tr. 167-69).  The mental health professionals also indicated that Martin was moderately limited in the following ways:  her daily activities; maintaining concentration, pace, and attention for periods of at least two hours; sustaining a routine without supervision; perform on a schedule; in her ability to understand, carry out and remember detailed instructions; interacting appropriately with the general public; performing simple tasks; and behaving in an emotionally stable manner (*id.*).  Rowe and Pineda also indicated that stress would cause Plaintiff's condition to deteriorate (Tr. 168).  The Therapist and Psychiatrist also indicated that Plaintiff suffered depressive syndrome with anhedonia, appetite disturbance, sleep disturbance, decreased energy, and had difficulty concentrating or thinking which resulted in marked restriction of activities of daily living, in maintaining social functioning, and repeated episodes of deterioration in a work-like setting (Tr. 169).

On November 30, Martin stated that she was "really trying to take better care of herself;" Rowe indicated that she had made slight improvement (Tr. 177).  On that same date, Pineda noted

that Plaintiff still had some residual symptoms though her thoughts were coherent and logical and that her insight and judgment remained intact (Tr. 176).

On December 1, Davis noted acute purulent sinusitis, osteoarthritis, and obesity (Tr. 179). On February 8, 2005, he diagnosed Plaintiff to have acute sinusitis gastroenteritis, hypertension, and obesity (Tr. 178).

On February 19, 2005, Martin reported to Rowe that there were no major changes and stated that she was sleeping and eating better and was less depressed (Tr. 174).

At the evidentiary hearing, the ALJ called on Psychologist Douglas McKeown to testify as an expert (Tr. 210-16; *see also* Tr. 49-50). McKeown testified that he had listened to Martin's testimony at the hearing and reviewed the record which he summarized; the Psychologist noted that there was "no indication that [Plaintiff] is in regular therapeutic treatment other than seeing a counselor periodically" (Tr. 212). McKeown stated that there was no indication of an attention deficit disorder as there was no treatment for such; he further indicated that Plaintiff's condition had improved and that she was only mildly limited in her activities of daily living, social functioning, and in her concentration, persistence, and pace.

In his decision, the ALJ gave "substantial weight to the opinions of Dr. Das, Dr. Davis, Dr. Bell, [and] Dr. Reynolds

regarding the claimant's functional abilities as found in their assessment notes and opinion" (Tr. 26). He gave "substantial weight to the assessments of Dr. Pineda and progress noted by mental health, with exception to the Questionnaires" (*id.*). The ALJ agreed with McKeown's assessment that Pineda's Mental Residual Functional Capacity was inconsistent with his own medical notes and not supported by the medical evidence of record (Tr. 25). The ALJ also discounted the conclusions of the pain form (Tr. 23).

The Court finds substantial support for the ALJ's rejection of the limitations in Davis's pain form and Pineda's mental medical source statement. The ALJ was correct in stating that the doctor's medical notes do not support the degree of limitation asserted. Davis's notes make very few references to pain or the treatment thereof; furthermore, Dr. Bell provided the only physical functional capacity assessment by an examining physician and his notes indicate that Martin is capable of performing as much as light work. Pineda's mental medical source statement fails to acknowledge the improvement that his and Rowe's treatment records indicate occurred; additionally, Pineda and Rowe's once-a-month, at best, treatment fails to support the limitations they assert. Plaintiff's claim otherwise is without merit.

Plaintiff has also claimed that the ALJ did not properly

11

consider her obesity (Doc. 10, pp. 7-9).  The Court notes that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)C).  The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

The ALJ found that one of Martin's severe impairments was obesity (Tr. 22).  He also specifically noted that the evidence did not show that Plaintiff's "obesity by itself, or in combination with other impairments increases the severity of functional limitations or the functional limitations of the other impairments" (Tr. 26).  This language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to

one listed in Appendix 1, Subpart P, Regulations No. 4"). Plaintiff's claim is of no merit.

Martin has raised two claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 3rd day of November, 2006.

                                           s/BERT W. MILLING, JR.
                                           UNITED STATES MAGISTRATE JUDGE